# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

NIRP PASADENA, PLLC; and
NIRP SUGAR LAND, PLLC,

    Plaintiffs,

v.

MEDSTREAMING, LLC; WAEL ELSEAIDY; and RYAN PLASCH,

    Defendants.

C17-1607 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Defendants' Motion for Partial Judgment on the Pleadings, docket no. 17, is DENIED. A Rule 12(c) motion for judgment on the pleadings may not be granted unless, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, the moving party is entitled to judgment as a matter of law. *See Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 886-87 (9th Cir. 2017). Defendants have not made the requisite showing that any of them is entitled to judgment as a matter of law.[1]

    (a) With regard to plaintiffs' first claim for "recovery of license payments," the most defendants have demonstrated is that plaintiffs mislabeled their cause of action, which seeks a refund of amounts they paid to defendant Medstreaming, LLC ("Medstreaming"). Plaintiffs pursue such remedy on grounds that Medstreaming failed to cure material breaches of the parties' agreement (*i.e.*, breach of contract) and, in the alternative, was unjustly enriched. Compl. at ¶¶ 4.3 & 4.5 (docket no. 1-1). Plaintiffs' first claim will be treated as asserting breach of contract and/or unjust enrichment.

---

[1] The Court DECLINES to treat defendants' motion as having been brought under Rule 12(b)(6). Even if dismissal of one or more claims might have been appropriate under Rule 12(b)(6), the Court would have granted plaintiffs leave to amend the operative pleading.

MINUTE ORDER - 1

(b) With regard to plaintiffs' second, third, and fourth claims for breach of contract (revocation or rejection), breach of express warranty, and breach of implied warranties, whether plaintiffs assert such claims against individual defendants Wael Elseaidy and Ryan Plasch is unclear, but to the extent such claims are alleged against Messrs. Elseaidy and Plasch, the Court construes them, in conjunction with plaintiffs' seventh claim for "negligent participation liability by officer," as contending that a basis exists for piercing the corporate veil or for imposing liability on a corporate officer for engaging in or ratifying wrongful conduct. See Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 553-54, 599 P.2d 1271 (1979); Johnson v. Harrigan-Peach Land Dev. Co., 79 Wn.2d 745, 751-54, 489 P.2d 923 (1971). Whether plaintiffs can prove such theory of individual liability remains to be seen, but at this stage of the proceedings, Messrs. Elseaidy and Plasch are not entitled to judgment on the second, third, fourth, or seventh causes of action.

(c) With regard to plaintiffs' fifth claim for fraudulent inducement, defendants cite to Rule 9(b), which requires that allegations of fraud be stated with particularity, but they appear to seek either judgment as a matter of law or dismissal with prejudice. Neither remedy is appropriate. Moreover, the Court is satisfied that plaintiffs have pleaded fraudulent inducement with sufficient particularity, and any questions about exactly which of Medstreaming's owners, officers, and/or employees allegedly made the misrepresentations at issue can be sorted out in discovery.

(d) With regard to plaintiffs' sixth claim for violation of Washington's Consumer Protection Act ("CPA"), plaintiffs have adequately pleaded the facts necessary to allege a "plausible" cause of action. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-70 (2007). Plaintiffs' CPA claim alleges unfair or deceptive acts or practices not regulated by statute but in violation of public interest. See Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). Defendants contend that the pleadings fail to establish two of the five elements of a CPA claim,[2] namely an "unfair or deceptive" practice and a "public interest." Defendants' arguments lack merit for the following reasons.

(i) When a business practice is not *per se* unfair or deceptive, the question is whether the practice is either unfair or deceptive under the criteria developed in Washington jurisprudence. See Rush v. Blackburn, 190 Wn. App. 945, 962-63, 361 P.3d 217 (2015) (outlining a three-part test

---

[2] To prevail under the CPA, a private plaintiff must prove that (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785-93, 719 P.2d 531 (1986).

MINUTE ORDER - 2

for "unfair" acts[3] and a separate standard for "deceptive" practices[4]). The complaint alleges that Medstreaming misrepresented the status and/or capabilities of its software and that the software did not perform as Medstreaming indicated it would. The complaint further asserts that Medstreaming arranged for plaintiffs to enter into a finance agreement with non-party Balboa Capital Corporation ("Balboa") via which Medstreaming received payment up front for the software licensed by plaintiffs, and plaintiffs are required to continue to make periodic payments to Balboa even though Medstreaming's software never worked and plaintiffs no longer have access to the product. Contrary to defendants' arguments, the Court cannot say as a matter of law that, assuming these facts to be true, plaintiffs cannot prove the "unfair or deceptive" act element of their CPA claim.

      (ii)     An unfair or deceptive act or practice affects the public interest if it injures others besides the plaintiff or has or had the capacity to injure others. RCW 19.86.093. Washington courts have applied a five-factor test when evaluating whether an essentially consumer transaction involves the public interest,[5] and a different four-part inquiry when the dispute is contractual or private in nature,[6] but in both scenarios, no one factor is dispositive, and not all factors need to be present. *Rush*, 190 Wn. App. at 969. Moreover, the "consumer transaction" / "private contract"

---

[3] A trade practice can be considered "unfair" if (i) it offends public policy, although not the letter of the law, or falls within "the penumbra of some common-law, statutory, or other established concept of unfairness"; (ii) it is "immoral, unethical, oppressive, or unscrupulous"; and/or (iii) it causes substantial injury to consumers, competitors, or other businesses. *Rush*, 190 Wn. App. at 962-63. An act can be "unfair" without being "deceptive." *Id.* at 963.

[4] Conduct is "deceptive" if it involves a representation, omission, or practice that is "likely to mislead" a reasonable person and has "the capacity to deceive a substantial portion of the public." *Rush*, 190 Wn. App. at 963. Whether an act is "unfair" or "deceptive" within the meaning of the CPA is ultimately a question of law for the Court, not a question of fact. *Id.* at 963-64.

[5] *See* *Hangman Ridge*, 105 Wn.2d at 790 (summarizing previous cases involving consumer transactions as considering the following factors to be "relevant to establish public interest: (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?").

[6] *See* *Hangman Ridge*, 105 Wn.2d at 790-91 (observing that the "[f]actors indicating public interest in [the breach of private contract] context include: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?").

MINUTE ORDER - 3

dichotomy does not apply in every case, and that "neat distinction" was disregarded by the Washington Court of Appeals in <u>Rush</u>. <u>Id.</u> at 969-70. In this matter, the Court is similarly unconvinced that the "private contract," as opposed to the "consumer transaction," set of factors control, and to the extent that Medstreaming is engaged in an ongoing, unfair and/or deceptive course of conduct, plaintiffs might be able to demonstrate the type of public interest required to proceed on their CPA claim.

   (iii) Corporate officers who participate in wrongful conduct or with knowledge approve of wrongful conduct that violates the CPA cannot use the corporate form to shield themselves from liability. <u>Washington v. Ralph Williams' NW Chrysler Plymouth, Inc.</u>, 87 Wn.2d 298, 322, 553 P.2d 423 (1976); <u>see</u> <u>Strategic Intent, LLC v. Strangford Lough Brewing Co.</u>, 2011 WL 1810474 at *17 (E.D. Wash. May 11, 2011). Plaintiffs have alleged sufficient facts to proceed on their claims against the individual defendants under the CPA.

 (2) Defendant Medstreaming's Motion for Protective Order, docket no. 23, is GRANTED as follows. Any materials produced by Balboa in response to plaintiffs' Rule 45 subpoena duces tecum that contain the identity and/or contact information of Medstreaming's customers or clients, and/or any pricing information, shall be treated as confidential. Such documents and information (the "Confidential Material") shall be maintained in a secure manner, may not be used for any purpose other than prosecuting, defending, or attempting to settle this litigation, and may not be disclosed to any person other than:

  (a) plaintiffs' counsel of record in this action, as well as employees of plaintiffs' counsel to whom it is reasonably necessary to disclose the Confidential Material for this litigation;

  (b) plaintiffs' officers, directors, and employees to whom disclosure is reasonably necessary for this litigation;

  (c) experts and consultants to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound" in the form attached to the district's model stipulated protective order, a copy of which is available at www.wawd.uscourts.gov;

  (d) the court, court personnel, and court reporters and their staff;

  (e) copy or imaging services retained by plaintiffs' counsel to assist in the duplication of the Confidential Material, provided that plaintiffs' counsel instructs any such service not to disclose the Confidential Material to third parties and to immediately return all originals and copies of the Confidential Material;

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed an "Acknowledgment and Agreement to Be Bound" in the form attached to the district's model stipulated protective order; deposition transcript pages and/or deposition exhibits that reveal the Confidential Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Minute Order; and/or

(g) the author or recipient of a document containing the Confidential Material or a custodian or other person who otherwise possessed or knew the Confidential Material.

Before filing with the Court copies of any documents produced by Balboa in response to plaintiffs' Rule 45 subpoena duces tecum, plaintiffs' counsel shall either fully redact the Confidential Material or follow the procedures set forth in Local Civil Rule 5(g) for filing papers under seal. Within sixty (60) days after the termination of this action, plaintiffs and plaintiffs' counsel must return all Confidential Material to Balboa, including all copies, extracts, and summaries thereof, except that plaintiffs' counsel may retain one archival copy of any court filings, hearing transcripts, deposition transcripts and associated exhibits, expert reports, attorney work product, expert work product, and/or correspondence that contain the Confidential Material. In lieu of returning the Confidential Material to Balboa, plaintiffs' counsel may, after meeting and conferring with counsel for defendants and Balboa, destroy documents in plaintiffs' or plaintiffs' counsel's possession that contain the Confidential Material, and provide to counsel for defendants and Balboa a declaration signed under penalty of perjury identifying the items destroyed and describing the manner of destruction.

(3) Balboa Capital Corporation's Motion for Protective Order or Alternatively to Quash, docket no. 21, is STRICKEN as moot. In responding to plaintiffs' Rule 45 subpoena duces tecum, Balboa shall stamp as "CONFIDENTIAL" any document that contains the identity and/or contact information of Medstreaming's customers or clients, and/or any pricing information.

(4) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 27th day of June, 2018.

William M. McCool
Clerk

s/Karen Dews
Deputy Clerk

MINUTE ORDER - 5